Once again, my name is George Reedy, appearing on behalf of the petitioner in this case, Indrajit Singh Labana. The threshold issue in this case, once again, is credibility. Also, the decision of the immigration judge, which the board affirmed, his decision also stated that even if the petitioner was credible, he had not established persecution based on at least one of the five enumerated grounds listed in the Immigration Naturalization Act. First, I'd like to plant the seed that this is a mixed motive case, but first, we would like to turn to the threshold issue of credibility. The immigration judge had cited that there were inconsistencies between the petitioner's testimony and the documents he presented in support of his asylum claim. The first involved a medical certificate, which he claimed was a medical certificate regarding the treatment that the petitioner received from a doctor, which was undated and lists that the treatment commenced on November 25, as opposed to November 15, which the petitioner testified to in court. Why does it matter which of the two dates is accurate? Your Honor, I submit that it isn't. I believe there is case law that says that minor inconsistencies in dates where they do not reveal anything about the petitioner's persecution are not a permissible basis for an adverse credibility function. Testifies to a particular date on which he was, had these bad things happen to him, and that this, therefore, had to be changed the 25th in order to make it after it? No, Your Honor. In fact, I believe we're talking about the second arrest in 1995, November, where he testified that I believe he was arrested around November 7, was released a week later, and then sought treatment after a day or so of home therapy. And so then it would stand to reason that he would have been. It does go to establishing a key element of his testimony, the dates on which he was arrested, detained, and then sought medical treatment. Yes, Your Honor, although it doesn't specifically go to his arrest and this treatment, and it goes to subsequent to his release. Well, it's being offered as a document to corroborate that he did indeed receive treatment for serious injuries, correct? Yes, Your Honor. So isn't that a fairly significant date? It is a very significant date, Your Honor. And the problem with this document, and I seem to be on a theme this morning with false documents, but this is the one where the date has obviously been changed, the 1 became a 2. There was some confusion. The petitioner. Confusion? Yes, Your Honor. I submit. Is somebody tampering with the date on the document? Well, I submit that he requested this document subsequent after the fact when he was in removal proceedings, and that there must have been some confusion over when was the exact date, and it was changed either from November 15th to November 25th or vice versa. And then the doc. The immigration judge cite that as standing for the proposition that because this document was not obtained until after he was in removal proceeding, because the document has been altered, there is an attempt being made to perpetrate a fraud upon the court as to the date in order to avoid a finding of inconsistency in the key dates of the test matter. Yes, Your Honor. That is a concern. However. A concern or permissible inference that the fact finder can draw. Well, the IJ doesn't specifically state what the significance of that discrepancy is. Nor has he said what Petitioner stands to gain. Explicitly state what Petitioner stands to gain by offering misleading testimony on that issue. Furthermore. I mean, doesn't it go to then question whether or not he was ever arrested at all? And whether or not he ever received medical treatment for any injuries? Yes, Your Honor. But when faced with this discrepancy, he consistently testified that, yes, I was released on November 15th. And this must be it. And I saw the doctor the next day. But then he offers as corroborating evidence a medical record which may have a date of the 25th, which is 10 days later. We all know the difficulties that Petitioner faces in obtaining documents in support of his asylum claim. And that there's a discrepancy, obviously, on his document. But the question is why he should be held responsible for that. I submit he should not be held responsible for arresting him. And was the number changed from a 1 to a 2 or a 2 to 1? I can't remember. I don't know whether it was, Your Honor. It's a question. Well, the 1 to 2, that made it worse instead of better. Yeah. That is true. That's the way I read it, that it was changed. It was that the 15, which would have been fine, was marked over and 25 was written. Which would lead to the inference that it doesn't enhance his claim. If it is from a change from a 15 to a 25. But there are also other discrepancies that maybe we should go on to, Your Honor. And please make sure that maybe now is the time to do it. Assuming everything he says is true, why do we have a protected ground? Yes, Your Honor. I believe that the Petitioner testified. I would like to refer you to the administrative record on the 1988, I think. I can look on that. Go ahead, and we'll see if we need it. Okay. Well, based on the administrative record, I believe it clearly indicates that he initially testified that he was accused of assisting or a militant or being a militant, and that another motive. Well, let me make sure we've got our narrative straight. I think this is the case, although I can sometimes get confused among them. This is the case where he claims he's framed. He goes to the mail cell. The policeman puts a pistol and two bullets in his pocket, then claims he's a militant. Then they take him to jail, slap him around a little bit, and he gets out only upon paying a bribe. Yeah, this is his first arrest. Second arrest, he got very used to it. He's asked about it, and he says, why do you think this happened? He says, I think it was for money. Yes, that's correct. Which, pure extortion, it sounds like. Which is his opinion, yes. He stated that that was one of the reasons. I believe in the administrative record. It really has to rely on the second arrest, not that one, I think. I believe that's correct, Your Honor. The second arrest, he was arrested after attending a celebration of a religious event, a birthday, I believe, of one of the gurus. And he was suspected of involvement in a bombing attack that had occurred at that time. And he was arrested along with another individual. And he was severely beaten and tortured. And he was very detailed about the mistreatment he suffered. And when asked by, both on direct and cross, and I'll have the administrative record ready for you when I do my closing, he testified that the police told him he was being arrested for two reasons. One was because he was mistakenly suspected of terrorist activity. And two, to obtain money from him. Now, it is well settled, I believe, that if when the non-political motive is the only motive for the mistreatment that a petitioner would suffer, that would only preclude a finding that his persecution was not based on one of the five. Here, there is also a political motive along with a non-political motive. And as such, the immigration court should not preclude a finding that his persecution was based on at least one. I think I missed something. It's either he participated in a bombing or he's the victim of an extortion attempt. Where's the political nexus? Well, being falsely accused of being a militant would be the imputed political opinion. It would be the political opinion that's being imputed to him. And that the extortion on that event was just one of the ways in which he was being persecuted. And not the primary motive for the persecution. I don't see how that gets around the problem Judge Canby raised, where he says I think the motive for the police was to try and get money out of him. Well, he's relying on Petitioner's testimony after considerable prodding. He initially testified, I was arrested because I was being accused of being a militant. And I was also arrested as well because they kept asking me for money. And so, after considerable prodding, he says, well, what do you think? You are arguing that the arrest for the bombing was because of his political beliefs. Yes, Your Honor. Not because they really thought he was a bomb. And the fact that there may be a non-political motive as well does not preclude a finding that his adverse, that the grounds for his persecution was not imputed political opinion. Okay, so we would have to conclude that, that their stated reason, we think you're a bomber was also false. But that it was really because of his political activities that they drug him in. If I'm following you correctly, yes, Your Honor, yeah. Okay, I understand, Your Honor. I can reserve the rest of my time. Okay, thank you. May it please the Court. I'm Mark Walters, representing the Attorney General, John Ashcroft. I believe this case presents to the Court solely the credibility issue. And the reason for that is that while the immigration judge did have an alternative finding on the merits, the Board's decision adopts the immigration judge's credibility finding and goes no further. So I believe that if you were to disagree with the Board's decision and find that there was not substantial evidence to support the credibility determination, the proper action would be to remand to the Board to consider the merits of the asylum claim. A good deal of my opponent's brief is focused on the merits, but there are really only four pages that deal with the actual credibility claim. The first thing they argue is that the record doesn't show that the IJ ever admonished Mr. Lubana says in the brief he has no idea what the IJ is talking about. But in fact, near the very beginning of the hearing on page 125 of the record, the IJ says, I'm going to ask you to answer the questions that your attorney asks you. When you just tell me whatever you feel like telling me, it sounds like you've memorized something. So he was on notice early on that the immigration judge had a problem with long The record reveals, according to Mr. Lubana, few if any objections by the INS attorney that Mr. Lubana's answers were not responsive or that he was rambling. But to take just a few on page 211, sir, listen to my question or we're going to be here a very long time. On page 212, you're not answering my question. On page 217, sir, you're not answering my question right now. Mr. Lubana then argues that he simply cannot respond to the nonspecific remarks of the IJ about the problems she has with documents. This decision by an IJ probably is a model of specific accounting of what is wrong with the documents that Mr. Lubana presented. Well, it is and it isn't. It's a very odd decision by the IJ. It's a she, it's IJ Polly Weber. She goes through, well, there's this, but I don't think that's really true. There's this, and I don't think that's really true. Born out of the wedlock, well, I thought that was a problem, but I guess that really means in marriage. It's an odd, I mean, she goes through all these possible grounds for an adverse credibility finding, and then she kind of pulls back on most of them. I've never seen one quite like that. Well, I think the only ones that she pulled back on were identity and religion. She expressed serious reservations in the middle of her opinion about his identity and about his religion. In particular, she was concerned that he used a different last name than the relatives who submitted documentary evidence. But in the end, she ultimately agreed that using the caste name, which the rest of his family didn't use, was an explanation that she would accept, and so his identity was established. As to religion, she was concerned somewhat by the fact that he did not have a good answer for the question about the Sikhs' religious position on castes, and he did not. But as a matter of fact, she ultimately decided from pictures — I thought it was a pretty good answer. I'm sorry? I thought it was a pretty good answer on castes. Well, he seemed quite proud of his caste, and that seemed to conflict with what the immigration judge thought was the position of the Sikh religion on such things. But in the end, after expressing that, she did go back and say that, based upon photographs and other evidence, I do believe he is a Sikh and that he's not posing as one. But everything else, she didn't pull back on, Your Honor. After identity and religion, she does not accept the rest of his testimony. She was specific about it, I think, as well. Mr. Labana says he can hardly be held responsible for what the doctor's reports say, but he sponsored those reports, not the government. He says that the latest letter from his father may not have been presented to the immigration court because it was not given to his counsel. So he's speculating about his own action and that of his counsel, and then criticizing the I.J. for speculating that the letter may not have been helpful to Mr. Labana since it wasn't presented to the court and easily could have been. Looking at the I.J.'s credibility findings for specifics, the I.J. talked about — Let me back up on that one. That's been puzzling me from the beginning on this case. The I.J. knows that he got a letter from his father. He says, well, I'm not sure where the letter is and I'm not sure why it's not been introduced. And she then speculates, well, it must have had some favorable information — unfavorable information to your case, and that's why you're not sending it to me. Fathers sometimes write letters that just say, you know, how are you doing and da, da, da, da, da, that's not entirely irrelevant. It wasn't pure speculation. I think it would be appropriate to infer from the absence of readily available evidence what she inferred, but she wasn't just inferring. He testified that the letter said two things, one of which was favorable to him and one of which was unfavorable. He said the letter said the police are still coming to my house. But he also said the letter said his father said things are mostly okay now. And that reflects — well, I won't go outside the record. He said things are mostly okay now. So we don't know what the record said because he didn't present it. But part of a credibility determination is not just where the conflicts lie and how serious they are, but what is the explanation for them. The explanations this witness gave for so many things just don't ring true. And his explanation in his brief, which wasn't even offered to the I.J., was perhaps it wasn't produced because I didn't give it to my counsel. I don't think that explanation — as I said, it wasn't before the immigration judge, but as with explanations that were, it doesn't ring true. The specifics that the I.J.'s credibility findings included involved a specific finding that he appeared to have memorized testimony until he was stopped from giving long narratives and required to do a question and answer. She pointed out that when he did that on cross-examination, the I.N.S. trial attorney's responded to or a rambling response came across on many key issues. She pointed out that there's another affidavit of the father that was attached to an envelope that bore a postmark that predated the date of the father's affidavit. So apparently it was mailed a week before it was actually executed in India. That date was not adequately explained, that date confusion by the witness. She points out that the father's affidavit, the first affidavit — I'm sorry, the first affidavit contradicts the testimony he gave that he lost interest in the dairy business after he was arrested the first time on his — en route to the customers that he was serving. His explanation for that is as telling as the fact that his father's affidavit conflicts with his testimony. His explanation was deemed unsatisfactory, and on pages 216 to 219, you'll see the efforts to draw that explanation out of him. He also — the affidavit also contradicts his own testimony that the dairy farm shut down in the spring of 1996. His father said that in December of 96, the dairy farm was sold by him. All of these inconsistencies are against the backdrop of a country report that talks about many Sikh asylum applications appearing to be fabrications. Now, that part of the world undoubtedly involves a very difficult situation for Sikhs and people living in that region, and there are legitimate claims that come out of that area. But a number of people are trying to piggyback onto that situation and push illegitimate claims through. And the Court should really defer to the immigration judge's finding here, supported amply by substantial evidence, that this is one of the cases that falls on the fabrication side of the fence. I'll submit on the briefs. Thank you. Petitioner in the instant case demonstrated his eagerness to testify. His testimony was sufficiently detailed. As the Court has already noted, there are many issues which the immigration judge ultimately decided were not an issue. Identity was not an issue. His religion was not an issue. The fact that he was a dairy farmer was not an issue. The fact that his dairy farm eventually closed down was ultimately found to be not an issue. The fact that he has a cat's name was ultimately not an issue. The Respondent's Counsel raises the discrepancy between the father's letter, that petitioner regarding the family news that the petitioner testified that was in that letter. He did not produce that letter in court because it was just family news. He – I would refer to the administrative record, page 201, where the immigration judge – where he was asked what was contained in that letter. And he says, oh, it was just that family news. Everything was okay. But he does not have – it was not explicitly asked. Yeah. Can I just – I only have one question for you, Your Honor, and that is could you respond to the disparity in dates between the postmark on the envelope and the date on the affidavit? Yes, Your Honor. Petitioner testified that he received envelopes, I believe – I believe one in February and two in May. And he kept repeating that answer, I believe, suggesting that he received another envelope the month that he was supposed to have received those additional documents. And the court seems to suggest that there were not two envelopes in that month, and yet he testifies consistently that there were. And your adversary testified that the envelope that was – that had a date earlier than the date on the affidavit was actually stapled to the document. Do you – and frankly, I can't remember whether she – whether that's been established or not. Do you have anything to say about that, whether it was actually stapled together? No, Your Honor. I would have a second look back. Do I read your brief correctly as not raising anything in the Convention Against Torture? That's correct, Your Honor. Okay. Thank you very much. Both counsels were helpful arguments. Thank you both. Okay. The case of Inderjit Singh Laban.
judges: Canby, W. Fletcher, Tallman